STEWART, J.
 

 | Defendant-Appellant, American Century Casualty Company (“American”), is appealing a judgment rendered in favor State Farm Mutual Automobile Insurance Company (“State Farm”) and Tommy McClain. For the reasons discussed below, we affirm the trial court’s ruling.
 

 FACTS
 

 On April 19, 2007, 17-year-old Amber Bridges, who is the daughter of Terry and Donna Bridges, was operating a 2002 Hyundai Sonata on Louisiana Highway 594 in Monroe, Louisiana. Amber called and asked Terry for permission to drive the car to a prom committee meeting for her junior prom. He told her “no” and instructed her to have her mother take her to school. Against her father’s wishes, Amber drove the car anyway.
 

 While en route to the prom committee meeting, Amber was involved in an accident with a 1992 GMC pickup truck owned by Tommy McClain, at the intersection of Millhaven Road and Highway 594, when she attempted to turn left onto Millhaven Road. This was the first time that Amber operated the vehicle on her own without either one of her parents present in the vehicle.
 

 Amber allegedly admitted to police officer Corporal R.D. Crowder that she misjudged the distance of McClain’s truck and proceeded into the intersection where the accident occurred. Amber was issued a citation as a result of this accident.
 

 Amber received her official driver’s license approximately two weeks prior to the accident. Due to her lack of driving experience, Amber only [2had permission to drive the car when Terry or Donna was in the car with her.
 

 The car was owned by her father, Terry, and insured by American through Advanced Planning Insurance Company (“Advanced”). McClain’s vehicle was insured by State Farm.
 

 On November 20, 2006, Terry obtained a policy of automobile liability insurance with American. This was the first time that Advanced placed insurance for Terry with American. At that time, Amber was 16 years old with a driving permit and living in her parents’ household. When Terry signed the application for the insurance, he did not disclose Amber as a resident of the household over the age of 14. He only listed himself and his wife, Donna Bridges. On December 7, 2006, the Hyundai Sonata involved in this accident was added to Terry’s insurance policy.
 

 McClain’s truck was totaled in the accident, and American denied coverage for the liability of Amber. As a result, State Farm paid the fair market value of his loss and towing expenses, totaling $4,272.53. When State Farm paid that amount, McClain subrogated his rights to State Farm to pursue the responsible parties for reimbursement of the amounts paid, as demonstrated by the Conditions Section of State Farm’s policy and by virtue of the Subrogation Receipt signed by McClain.
 

 State Farm and McClain instituted a civil suit for damages against Terry, Amber, and American. On July 15, 2009, a trial on the merits took place. The trial court ruled that Amber was solely at fault for causing the | ^collision, that the dam
 
 *1146
 
 ages sustained by McClain totaled $4,522.53,
 
 [1]
 
 and that American would not be able to void the policy issued to Terry for material misrepresentation. State Farm was awarded $4,272.53 in damages and McClain was awarded $250.00 in damages. American now appeals.
 

 LAW AND DISCUSSION
 

 Intent to Deceive
 

 American asserts two assignments of error in this appeal. In the first assignment, American alleges that the trial court erred in finding that Terry Bridges did not have the intent to deceive American when he completed his application for insurance.
 

 An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Where two permissible views of evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Willis v. Safeway Insurance Company of Louisiana,
 
 42,665 (La.App. 2 Cir. 10/24/07), 968 So.2d 346;
 
 Cole v. State Department of Public Safety & Corrections,
 
 2001-2123 (La.9/4/02), 825 So.2d 1134. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.
 
 Id.
 
 In order to reverse a fact finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes 14 that the finding is clearly wrong.
 
 Willis, supra., Stobart v. State, through Department of Transportation and Development,
 
 617 So.2d 880 (La.1993). La. R.S. 22:860, which was formerly cited as La.
 
 R.S.
 
 22:619, states:
 

 A. Except as provided in Subsection B of this Section and R.S. 22:1314, and R.S. 22:1315, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it from attaching, unless the misrepresentation or warranty is made with the intent to deceive.
 

 B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless either one of the following is true as to the applicant’s statement:
 

 (1) The false statement was made with actual intent to deceive.
 

 (2) The false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer under the policy.
 

 A prospective insured has a duty to inform the insurer of all facts which might be used in determining whether the insurance policy will be written.
 
 St. Paul Fire and Marine Ins. Co. v. St. Clair,
 
 193 So.2d 821 (La.App. 1st Cir.1966),
 
 writ denied,
 
 250 La. 375, 195 So.2d 646 (1967). Pursuant to La. R.S. 22:619,
 
 [2]
 
 an insurance policy may be voided if (1) the insured made a false statement in the insurance application, (2) the false statement was material, and (3) it was made with the intent to deceive.
 
 West v. Safeway Ins. Co. of Louisiana,
 
 42,028 (La.App. 2 Cir.
 
 *1147
 
 3/21/07), 954 So.2d 286. Because of the inherent difficulties of proving intent, strict Uproof of fraud is not required to show intent to deceive.
 
 Willis v. Safeway Insurance Company of Louisiana, supra.
 
 The insurer claiming the defense of material misrepresentation in order to avoid coverage bears the burden of proving that the insured misrepresented a material fact and did so with the intent to deceive.
 
 Cousin v. Page,
 
 372 So.2d 1231 (La.1979). The intent to deceive must be determined from the attending circumstances which indicate the insured’s knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentations.
 
 Willis, supra.
 

 A pertinent portion of American’s policy states:
 

 The policy shall be voided if the insured has lied, with the intent to deceive, on his application and/or when negotiating his insurance contract.
 

 In regard to the first prong discussed in
 
 West, supra,
 
 American asserts that Terry made a false statement in the insurance application when he did not disclose Amber as a resident of his household when the application asked him to list all residents over the age of 14.
 

 In his sworn statement, Terry stated that he did not recall having a conversation with anybody at Advanced regarding whether Amber should be included in the policy. If an agent by mistake, fraud or negligence inserts erroneous or untrue answers to the questions contained in the application, those representations are not binding upon the insured.
 
 Toups v. Equitable Life Assurance,
 
 94-1232 (La.App. 3 Cir. 5/3/95), 657 So.2d 142;
 
 Bertrand v. Protective Life Insurance Co.,
 
 419 So.2d 1254 (La.App. 3 Cir.1982). In |fithe instant ease, Bernice, the representative of Advanced who actually completed this application for insurance, knew Terry, his background, his children and their ages. Additionally, Bernice had Terry sign this insurance application using an electronic signature pad without presenting the application to Terry for review. An insurance applicant may rely upon and sign an application as completed by the agent and may rely upon the agent’s expertise in interpreting the nature of the information sought by the company he represents.
 
 Toups, supra; Economy Auto Salvage, Inc. v. Allstate Ins. Co.,
 
 499 So.2d 963 (La.App. 3 Cir.1986),
 
 writ denied,
 
 501 So.2d 199 (La.1986). Based on this evidence, we agree that American failed to carry its burden of proof required by the “false statement” prong, as discussed in
 
 West, supra.
 
 Since Terry did not review the application prior to signing it, American cannot prove that Terry made a false statement in the insurance application when he did not disclose Amber as a resident of his household. Bernice’s failure to list Amber in the policy is not binding upon Terry, who is permitted to rely upon Bernice’s expertise in interpreting the nature of the information sought by American.
 

 In addressing the second prong, American argues that this false statement was material, because had American known that Amber was living in the household and had a learner’s permit, then it would have insisted on Amber being listed as an excluded driver, or it would not have issued the insurance policy.
 

 As stated in the facts section above, Amber was a junior in high school with a learner’s permit at the time that the policy was issued. Amber 17did not drive any of Terry’s vehicles. Terry purchased the Sonata after the policy was issued with the intention of letting Amber drive it during her senior year of high school. When
 
 *1148
 
 Terry added the Sonata to the policy, he expressed his intentions to allow Amber to drive the vehicle during her senior year of high school to Bernice. Neither Bernice, nor any other representative of Advanced, advised Terry that he needed to add Amber to the policy.
 

 Based on that information, Terry believed that he did not have to list Amber until she actually began driving the car at the beginning of her senior year of high school. This testimony, coupled with the fact that Terry did not even read the application, proves that Terry did not recognize the materiality of his statements.
 

 Discussing the third and final prong from
 
 West, supra,
 
 American contends that the false statement was made with the intent to deceive because Terry left Amber’s name off of the policy application even though it asked for her to be listed. Terry testified that he did not intend to deceive American by intentionally omitting Amber from the policy, nor did he intend to hide the fact that Amber would be driving the vehicle in the future. Additionally, Terry testified that Amber had never been listed on any policy prior to the one at issue in this ease.
 

 As discussed above, Terry did not even read the application completed by Bernice. Since he did not even read the application, we must question how Terry could have intended to deceive American by withholding information, when he was unaware of what was in the form.
 

 In
 
 Darby v. Safeco Insurance Company of America,
 
 545 So.2d 1022 (La.1989), the Darbys were facing a cancellation of their policy because of their son’s two pri- or accidents. Mrs. Darby testified that an insurance agent provided her with options to maintain their coverage. However, the record contained conflicting evidence concerning the discussion between Mrs. Darby and the insurance agent as to whether the agent told Mrs. Darby that her son had to be no longer a resident of her household before Safeco would offer them coverage or whether the son could be an excluded driver. Safeco maintained the policy based on the belief that the son no longer lived in the household, when in reality he never moved out. The supreme court determined that the Darbys believed that Safeco would renew the policy, so long as the son did not drive the cars, and that the Darbys did not intend to deceive Safe-co.
 

 The Darbys believed that so long as they prevented their son from driving their vehicles, they could maintain coverages with Safeco. Similarly, Terry thought that so long as Amber did not drive his vehicles, he did not need to include her in order to maintain coverage. He believed that he only had to list Amber when she would drive one of his vehicles at the beginning of her senior year in high school. We find that Terry’s actions do not constitute the requisite intent to deceive. Without an intent to deceive, American cannot void the policy. This assignment of error is meritless.
 

 |
 
 ^Material Misrepresentation
 

 American argues in the second assignment of error that the trial court erred in not rescinding the policy of insurance issued by American to Terry because of a material misrepresentation on the application for insurance. In this assignment of error, American presents the issue of whether the insured has the required “intent to deceive” in order to rescind the policy of insurance, if an insured admits that he knew that he would be charged an increased premium
 
 for
 
 a policy of insurance if he lists his teenage daughter on the application for insurance and fails to list the teenage daughter on the application.
 

 Bernice prepared the insurance application and instructed Terry to sign without going over any insurance documents. Ter
 
 *1149
 
 ry did not read the application and relied on Bernice to prepare it properly. Also, when Terry added the Hyundai Sonata to the policy, he notified Bernice that Amber would be driving the vehicle during her senior year.
 

 As discussed in the first assignment of error, if Bernice by mistake, fraud, or negligence inserted erroneous or untrue answers to the questions contained in the application, those representations are not binding upon Terry. American is responsible for the acts of Bernice, its agent. Terry did admit that he knew that he would be charged an increased premium for a policy of insurance if he listed his teenage daughter on the application for insurance. However, he also stated that he was under the impression that he did not need to add Amber to the policy at the time the policy was issued because she would not be driving any of his vehicles. Bernice failed to tell| l0him otherwise, even when he informed her of his intentions. Terry’s actions do not constitute a material misrepresentation.
 

 For these reasons, we agree with the trial court’s determination that American failed to carry its burden of proof in regard to a material representation and the intent to deceive. This assignment of error is without merit.
 

 Damages
 

 In Amber Bridges’s answer to this appeal, she asserts that no evidence supports the trial court’s award of $4,272.53 for damage to the vehicle owned by McClain. She argues that the trial court awarded damages to American that exceeded the cost to place McClain’s vehicle back into the condition that it was prior to the accident. More specifically, Amber contends that State Farm failed to present proof of an estimate as to the cost to repair the McClain vehicle, testimony with regard to what the total value of the vehicle was prior to the accident, or any evidence of the vehicle’s salvage value.
 

 Alternatively, in the event that this court finds that American met its burden of proof with regard to damages, Amber argues that the amount of damages awarded should be reduced. McClain testified that there were no new parts on his vehicle at the time of the accident. Therefore, Amber asserts that State Farm should not be entitled to damages that would place the McClain vehicle in a better condition than it was prior to the accident.
 

 David Layne, who is employed by State Farm, testified that they use the Mitchell Estimating system when preparing estimates for damaged |nvehicles. Generally, State Farm uses either the new Original Equipment Manufacture Parts (OEM), or recycled Like, Kind, and Quality parts (LKQ), if they’re available when determining what types of parts could possibly be used to repair a vehicle, when preparing an estimate. In this case, Layne testified that State Farm could not locate any used parts for McClain’s truck, which was approximately 15 years old at the time and which was a popular model with rebuild-ers. Therefore, all new OEM parts were used to value the repairs to the truck.
 

 A vehicle is considered a total loss once the cost of repair exceeds 75% of the actual cash value. Layne testified that the damages to McClain’s truck amounted to 125% of the actual cash value, and his vehicle was declared a total loss, valued at $4,375.00. State Farm paid McClain the fair market value of his loss and towing expenses, totaling $4,272.53.
 

 Jerry Allred, American’s adjuster, testified that they estimated the total damages to be $1,900.00. However, Allred failed to fully assess the damages and only used recycled parts.
 

 
 *1150
 
 When comparing State Farm’s estimate of $4,375.00 to American’s estimate of $1,900.00, Layne testified that he believed that State Farm’s estimate more accurately reflected the damages sustained by the vehicle. Since American’s estimate only used recycled parts, which were determined unavailable, and failed to fully assess the damages, we must agree with Layne’s findings. The trial court’s determination that McClain’s vehicle suffered $4,272.53 in damages is affirmed.
 

 | ^CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the appellant, American Century Casualty Company.
 

 AFFIRMED.
 

 [1]
 

 . This total amount includes the $4,272.53 paid by State Farm to McClain and the $250.00 incurred by McClain in the form of his deductible.
 

 [2]
 

 . La. R.S. 22:619 is now cited as La. R.S. 22:860.